

**SO ORDERED.**

**SIGNED this 4 day of January, 2022.**

_____
**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

IN RE:

| | |
|---|---|
| ROBERT BURNS COOK, JR., | CASE NO.: 21-01059-5-SWH |
| CHERYL LOTT COOK, | CHAPTER 13 |
| DEBTORS | |

ORDER DENYING TRUSTEE'S OBJECTION TO CONFIRMATION AND
CONFIRMING CHAPTER 13 PLAN

This matter came on to be heard on the confirmation of Robert and Cheryl Cook's ("debtors") Chapter 13 Plan, [D.E. 2], and the trustee's Objection to Confirmation ("Objection"), [D.E. 26]. A hearing was held on December 14, 2021 in Wilmington, North Carolina where at the outset of the hearing the debtors orally amended their Plan, with the consent of the trustee, to resolve all but one of the trustee's objections to confirmation. At the conclusion of the hearing, the court took the matter under advisement. The following constitutes the findings of fact and conclusions of law supporting denial of the trustee's Objection and confirmation of the debtors' Plan under Rule 7052 of the Federal Rules of Bankruptcy Procedure, made applicable to the Motion through Rule 9014(c).

# FACTS

This matter is a core proceeding pursuant to 28 U.S.C. § 157, and the court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334. The court has the authority to hear this matter pursuant to the General Order of Reference entered August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

The debtors filed a petition for relief under chapter 13[1] of the United States Bankruptcy Code on May 6, 2021 ("Petition Date"). On the Petition Date, in addition to their chapter 13 schedules and statements, [D.E. 1], the debtors filed their chapter 13 Plan ("Plan"), [D.E. 2]. As part of their Plan, the debtors proposed payments to the trustee of $750.00 each month for 60 months. Additionally, the debtors proposed to retain their residence and make payments to their mortgage company directly each month, along with surrendering a boat to the corresponding lienholder. The debtors scheduled claims to priority creditors in the amount of $0.00, meaning general unsecured creditors would be the only parties being paid from the Plan payments (after payment of the trustee's statutory commission). According to the Plan, general unsecured creditors would receive a dividend of approximately 16.00% of their total claim. [D.E. 2, p. 9].

To aid creditors in determining whether the Plan complied with the applicable provisions of sections 1325(a) and 1325(b), the Plan made projections regarding what creditors would receive if this case were converted to one under chapter 7 (thus satisfying section 1325(a)(4)) and provided the debtors' "projected disposable income" in accordance with section 1325(b)(1)(b). To show their calculations under section 1325(a)(4), attached to the Plan on E.D.N.C. Local Form 113B, the debtors provided a Liquidation Worksheet that outlined what

---

[1] Except within formal citations, references to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, will be made by section number.

their creditors would receive in a hypothetical chapter 7 case. The Liquidation Worksheet reflected that no disbursements would be made to creditors in a chapter 7 case.[2] As the debtors' "current monthly income"[3] of $10,741.35 exceeded the median income level for a household of two in North Carolina, the debtors were required to calculate their "projected disposable income" using Official Form 122C-2. [D.E. 1, pp. 57-70]. After completing Form 122C-2, the debtors indicate monthly "disposable income" of $253.27. *Id.*

On May 10, 2021, Joseph A. Bledsoe, III was appointed as chapter 13 trustee ("trustee"). [D.E. 11]. The trustee objected to confirmation of the Plan on July 15, 2021. [D.E. 26]. In the objection, the trustee provides seven (7) different bases for why the Plan of the debtors should not be confirmed. Prior to the confirmation hearing, the trustee and the debtors consensually resolved five of the seven objections by the debtors agreeing to modify their Plan payments from $750.00 each month for 60 months (a total payout of $45,000.00); to $750.00 each month for 7 months, followed by $1,500.00 each month for 53 months (a total payout of $84,750.00, or approximately 30% to general unsecured claims) (the "Amended Plan").

The two remaining objections to confirmation were regarding (1) whether the male debtor was entitled to claim an exemption in the Morningside Drive property and (2) whether the debtors have provided all of their "projected disposable income." The court resolved the first objection by denying the trustee's Objection to the Debtors' Claim of Exemption by order dated December 14, 2021 [D.E. 53].

---

[2] On page 2 of the Plan at Section 2.5, the "liquidation value" under section 1325(a)(4) to be paid to creditors states "$101,425.79." This appears to be a typographical error in light of the prior Section 2.3 reflecting a total of payments to the trustee in the amount of $45,000.00, along with the detailed Liquidation Worksheet attached to the Plan that reflects $0.00 would be paid to unsecured creditors in a chapter 7 case. Plan payments were orally modified to resolve the liquidation test issues from $750 for 60 months to $750 for 7 months, followed by $1,500 for 53 months which results in an approximate 30% payout to general unsecured creditors.

[3] As defined under section 101(10A).

Thus, the only remaining objection to confirmation of the debtors' Amended Plan is whether the debtors have provided all of their "projected disposable income" in accordance with sections 1325(b)(1)(B), 1325(b)(2), and 1325(b)(3). On Form 122C-2 the debtors have deducted their contractual monthly mortgage payment of $2,233.34[4], instead of the IRS Local Standard for mortgage expenses of $1,098.00 each month. According to the trustee and conceded by counsel for the debtors at the Confirmation Hearing, if the debtors were required to use the IRS Local Standard mortgage expense deduction instead of deducting their actual mortgage expense, their "projected disposable income" would increase by the difference ($1,135.34). In other words, using the IRS Local Standard mortgage expense on Form 122C-2, instead of the contractual mortgage payment, would require a dollar-for-dollar increase of $1,135.34 each month to their Amended Plan in order for it to be confirmed.

## CONTENTIONS OF THE PARTIES

### A.

The trustee contends that when an above-median income debtor seeks to deduct a mortgage expense on Form 122C-2 which exceeds the IRS Local Standard for a mortgage expense which would otherwise be applicable to them, 11 U.S.C. § 1325(b)(2) requires the amount deducted to be reasonable. In essence, the trustee argues, the IRS Local Standard establishes an amount which is presumptively reasonable, but if a debtor seeks to deduct more than the Standard, the court is empowered to limit the deduction to an amount which is reasonable under the circumstances of the debtor's case.

Support for this position is found in *In re Harris*, 522 B.R. 804 (Bankr. E.D.N.C. 2014), where the court held "that the home and vehicle allowances serve only to operate as a 'cap' on

---

[4] This deduction appears on Line 33a of Form 122C-2 ("Mortgages on your home"). [D.E. 1, p. 65]. The debtors did not claim a net mortgage expense on Line 9c. There has been no indication from trustee that the debtors have improperly completed Form 122C-2 with regard to their mortgage payment.

4

the amount the Debtors may deduct, when their average monthly secured home and vehicle payments *exceed* the Standard amounts." *Id.* at 812. The *Harris* court supported the holding with dicta from *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61 (2011). *Id.* ("The dicta in *Ransom* clearly requires that the Debtors be limited to the Local Standard [ ] for their mortgage payment."). However, in reaching its decision, the court in *Harris* recognized that its holding "is inconsistent with the Form B22C," *Id.* at 815, and that "Form B22C needs to be modified to comport with the Bankruptcy Code." *Id.* at 816. *Harris* has been followed by other bankruptcy courts. *See e.g., In re Briggs*, 570 B.R. 730, 743-44 (Bankr. W.D. La. 2017); *In re Wilkerson*, Case No. 14-00582, 2015 WL 3935259 (Bankr. D.C. June 25, 2015).

B.

The debtors counter that the plain language of sections 707(b)(2)(A)(iii), and 1325(b)(3), along with the Official Form itself, allows them to deduct the entirety of their contractual mortgage payment—without regard to a showing of reasonableness. Support for the debtors' position is found in two circuit court opinions: *Drummond v. Welsh (In re Welsh)*, 711 F.3d 1120 (9th Cir. 2013), and *Baud v. Carroll (In re Baud)*, 634 F.3d 327 (6th Cir. 2011). These courts, and the lower courts adopting their reasoning, found that section 707(b)(2)(A)(iii) makes no reference to the IRS Standards, and its plain language allows for a debtor's deduction of the actual contractual mortgage payment – a result that is also contemplated by Official Form 122C-2, a form that directs debtors to list their entire mortgage payment.

**THE DEBTORS ARE ENTITLED TO DEDUCT THEIR ENTIRE CONTRACTUAL MORTGAGE PAYMENT ON FORM 122C-2**

This court took a different path than that followed in *Harris* in *In re Jackson*, 537 B.R. 238 (Bankr. E.D.N.C. 2015), *aff'd*, *Lynch v. Jackson, (In re Jackson)*, 853 F.3d 116 (4th Cir. 2017), holding that a debtor who properly completes Official Form 122C-2 will be deemed to

5

satisfy the requirements of section 707(b)(2)(A)(iii) as the Form "synthesize[s] the various requirements of the statute." *Jackson*, 537 B.R. at 247. Continuing with the analysis, this court holds that above-median-income debtors can deduct their contractual mortgage payment in accordance with the plain language of sections 707(b)(2)(A)(iii) and 1325(b)(3).

A.

With the trustee objecting, in order to be confirmed, the Amended Plan must provide all of the debtors' projected disposable income to be received during the 60-month applicable commitment period. 11 U.S.C. § 1325(b)(1)(B). To calculate the debtors' "disposable income" the debtors are to take their "current monthly income," section 101(10A), and subtract "amounts reasonably necessary to be expended." 11 U.S.C. § 1325(b)(2).

For above-median-income debtors, section 1325(b)(3) provides that "amounts reasonably necessary to be expended under paragraph (2), ***shall*** be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)." (emphasis added). Section 707(b)(2)(A)(i) states that expenses in section 707(b)(2)(A)(ii), (iii), and (iv) are to be deducted from a debtor's current monthly income. Of note, in section 707(b)(2)(A)(iii) it states,

> The debtor's average monthly payments on account of secured debts ***shall*** be calculated as the sum of—
>
> (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the filing of the petition . . .

11 U.S.C. § 707(b)(2)(A)(iii) (emphasis added).

Line 9 of Official Form 122C-2 provides that if a debtor's mortgage payment exceeds the IRS Local Standard, then they must enter $0 for their mortgage expense. Official Form 122C-2, https://www.uscourts.gov/sites/default/files/form_b_122c-2.pdf (last visited January 4, 2022).

An above-median-income debtor has to list and deduct their contractual mortgage payments on Line 33 ("Deductions for Debt Payment"). The instructions for Line 33 provide,

> **For debts that are secured by an interest in property that you own, including home mortgages, vehicle loans, and other secured debt, fill in lines 33a through 33e.**
>
> To calculate the total average monthly payment, add all amounts that are contractually due to each secured creditor in the 60 months after you file for bankruptcy. Then divide by 60.

Official Form 122C-2 at 5.

Debtors are obligated to utilize the Official Forms when filing for bankruptcy protection. Fed. R. Bankr. P. 9009(a). The Federal Rules of Bankruptcy Procedure provide that, "The forms shall be construed to be consistent with these rules and the Code." Fed. R. Bankr. P. 9009(c). With regard to Rule 9009, the Advisory Committee on Bankruptcy Rules noted, "Any changes that contravene the directions on an Official Form would be prohibited by this rule." Fed. R. Bankr. P. 9009 advisory committee's note to 2017 amendment.

B.

By correctly filling out Form 122C-2 and listing their entire mortgage payment, the debtors have followed the plain language of the Bankruptcy Code. This Official Form "synthesize[s]" the relevant statutory requirements. *Jackson*, 537 B.R. at 247. Section 1325(b)(3) requires that reasonable expenses "shall" be determined in accordance with sections 707(b)(2)(A) and (B). With Congress' use of the word "shall," this court does not have discretion and must follow the directive of the statute. *See e.g.*, *Lexecon v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) (citing *Anderson v. Yungkau*, 329 U.S. 482, 485 (1947)). Section 707(b)(2)(A)(iii) also uses "shall" for calculating secured debt payments. The plain language of the statute controls. *Lynch v. Jackson*, 853 F.3d at 121 (citing *Hartford*

*Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1 (2000)). Because the debtors have listed their contractual mortgage payment on Line 33 of Official Form 122C-2, they have complied with section 707(b)(2)(A)(iii) and section 1325(b).

The court adopts the reasoning of the Sixth[5] and Ninth[6] Circuits. In enacting the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") in 2005, Congress intentionally withdrew the discretion of bankruptcy judges to determine what expenses were "reasonable" for above-median-income debtors. *See, Baud*, 634 F.3d at 348; *Welsh*, 711 F.3d at 1134. The "means test" created by BAPCA is specific and can only lead to the conclusion that section 707(b)(2)(A)(iii) means what it says—a debtor is able to deduct the entirety of their mortgage payment when calculating their projected disposable income. *See, Welsh*, 711 F.3d at 1135 ("In enacting the BAPCPA, Congress did not see fit to limit or qualify the kinds of secured payments that are subtracted from current monthly income to reach a disposable income figure. Given the very detailed means test that Congress adopted, we cannot conclude that this omission was the result of oversight.").

While the court is mindful of policy considerations and possibilities for abuse with a bright-line rule allowing for the deduction of mortgage expenses, it chooses to be guided by the Supreme Court in *Ransom*. *See, Ransom*, 562 U.S. at 68 ("In eliminating the pre-BAPCPA case-by-case adjudication of above-median-income debtors' expenses, on the ground that it leant itself to abuse, Congress chose to tolerate the occasional peculiarity that a brighter-line test produces."). Moreover, it is not the function of this court to mold its decisions to policy concerns; that is the responsibility of Congress. *See Whaley v. Guillen (In re Guillen)*, 972 F.3d

---

[5] *Baud v. Carroll (In re Baud)*, 634 F.3d 327 (6th Cir. 2011).
[6] *Drummond v. Welsh (In re Welsh)*, 711 F.3d 1120 (9th Cir. 2013).

1221, 1228 (11th Cir. 2020) ("[G]eneral policy concerns cannot overcome the plain language of the statute.").

Lastly, Rule 9009(c) of the Federal Rules of Bankruptcy Procedure supports this holding. Official Forms are to be "construed to be consistent with these rules and the Code." Fed. R. Bankr. P. 9009(c). The debtors here, as conceded by the trustee, have filled out their Official Form 122C-2 correctly. By doing so, the debtors have complied with the relevant statutes as the forms merely provide the method for following the law. It should also be noted that in the seven years since the ruling in *Harris* wherein the court commented that the Official Forms needed to be "modified,"[7] no such amendment to the Official Forms has been made.

## CONCLUSION

Above-median-income debtors may deduct from their current monthly income their contractual mortgage payments when they are proposing to retain their residence. To hold otherwise would contravene the plain language of the Bankruptcy Code and the Official Forms.

The trustee's objection to confirmation of the debtors' Amended Plan is DENIED, and the Amended Plan is hereby CONFIRMED.

The debtors shall file a copy of their Amended Plan on the docket within 7 days of this order.

**END OF DOCUMENT**

---

[7] *Harris*, 522 B.R. at 816.