**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-1328

JOSEPH A. BLEDSOE, III,

        Petitioner - Appellant,

    v.

ROBERT BURNS COOK, JR.; CHERYL LOTT COOK,

        Respondents - Appellee.

On Appeal from the United States Bankruptcy Court for the Eastern District of North Carolina, at Wilmington. Stephani W. Humrickhouse, Bankruptcy Judge. (21-01059-5-DMW)

Argued: May 4, 2023                      Decided: June 14, 2023

Before THACKER and HEYTENS, Circuit Judges, and KEENAN, Senior Circuit Judge.

Affirmed by published opinion. Judge Heytens wrote the opinion, in which Judge Thacker and Judge Keenan joined.

Joseph A. Bledsoe, III, CHAPTER 13 TRUSTEE, New Bern, North Carolina, for Appellant. Richard Preston Cook, RICHARD P. COOK, PLLC, Wilmington, North Carolina, for Appellees.

TOBY HEYTENS, Circuit Judge:

Can Chapter 13 bankruptcy filers who earn more than the median income use their actual mortgage payments when calculating how much they can afford to pay unsecured creditors? Joining the Sixth and Ninth Circuits, we hold the answer is yes.

I.

In 2021, Robert and Cheryl Cook filed a voluntary petition under Chapter 13 of the Bankruptcy Code. That type of bankruptcy allows individual debtors "to obtain a discharge" so long as they pay their "creditors a portion of [their] monthly income in accordance with a court-approved plan." *Ransom v. FIA Card Servs., N.A.*, 562 U.S. 61, 64 (2011). "To determine how much income" debtors are "capable of paying, Chapter 13 uses a statutory formula known as the means test" to calculate debtors' "disposable income." *Id.* (quotation marks omitted).

The Cooks calculated their disposable income using Official Form 122C-2. As the form instructs, the Cooks entered the relevant "National and Local Standards" for their monthly costs for food, clothing, utilities, out-of-pocket healthcare, and vehicles.[1] The Cooks next listed the monthly amounts they pay for "Other Necessary Expenses" (as relevant here, taxes and life insurance). Finally, the Cooks recorded two "Deductions for Debt Payments" to secured creditors, including, crucially, their monthly mortgage

---

[1] The National and Local Standards are tables listing uniform amounts for necessities, which are prepared by the IRS to help estimate a person's ability to pay delinquent taxes. See Internal Revenue Manual §§ 5.15.1.9 (Aug. 29, 2018), 5.15.1.10 (Nov. 22, 2021), https://www.irs.gov/irm/part5/irm_05-015-001.

2

payment. After subtracting these amounts, the Cooks reported a monthly disposable income of $253.27, which would be used to repay unsecured creditors.

The bankruptcy trustee objected to the Cooks' proposed Chapter 13 plan. The trustee acknowledged the Cooks followed the instructions on Official Form 122C-2. The trustee maintained, however, that the form was wrong because the Bankruptcy Code only allowed the Cooks to claim the relevant Local Standards amount for their "Mortgage/Rent" deduction ($1,098) rather than their actual monthly payment ($2,233.34). Thus, the trustee reasoned, the Cooks' plan shortchanged unsecured creditors by $1,135.34 each month.

The bankruptcy court disagreed. "By correctly filling out Form 122C-2 and listing their entire mortgage payment," the court stated, the Cooks "followed the plain language of the Bankruptcy Code." JA 98. The court overruled the trustee's objection and confirmed the Cooks' plan.

The trustee asked the bankruptcy court to certify an appeal directly to this Court under 28 U.S.C. § 158(d)(2)(A). The bankruptcy court did so, concluding the case "involves a matter of public importance and a question of law requiring a resolution of conflicting decisions within the Eastern District of North Carolina, and because an immediate appeal may materially advance the progress of this case." JA 115–16 (citing § 158(d)(2)(A)). This Court granted the petition to appeal. We review interpretations of the Bankruptcy Code de novo. See *Johnson v. Zimmer*, 686 F.3d 224, 227 (4th Cir. 2012).

II.

We join the Sixth and Ninth Circuits in holding the Chapter 13 means test permits above-median income debtors to deduct the actual costs of their mortgage payments when

3

calculating their disposable income. See *In re Welsh*, 711 F.3d 1120, 1130 (9th Cir. 2013); *Baud v. Carroll*, 634 F.3d 327, 349 (6th Cir. 2011). We thus affirm.

A.

The relevant statutory provisions—though intricate—are straightforward. Because of the trustee's objection, the bankruptcy court could only approve the Cooks' proposed Chapter 13 plan if the plan made all "projected disposable income" available to unsecured creditors. 11 U.S.C. § 1325(b)(1)(B). Disposable income, in turn, means "current monthly income received by the debtor" minus "amounts reasonably necessary to be expended." § 1325(b)(2). And for above-median income debtors like the Cooks, the Bankruptcy Code instructs that "[a]mounts reasonably necessary to be expended . . . shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)." § 1325(b)(3).

We thus turn to Section 707(b)(2). The first provision of subparagraph A—which we will call Clause One—provides:

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter, the court shall presume abuse exists if the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of [two specified thresholds].

11 U.S.C. § 707(b)(2)(A)(i).[2] The three clauses referenced in Clause One—which we will call Clause Two, Clause Three, and Clause Four—address "[t]he debtor's monthly

---

[2] The referenced "paragraph (1)" says a bankruptcy court may dismiss a filing under Chapter 7 "if it finds that the granting of relief would be an abuse under the provisions of this chapter." 11 U.S.C. § 707(b)(1). The other subparagraph referenced in Section 1325(b)(3) allows a debtor to rebut any presumption of abuse created by Clause One by

4

expenses," "[t]he debtor's average monthly payments on account of secured debts," and "[t]he debtor's expenses for payment of all priority claims," respectively. 11 U.S.C. § 707(b)(2)(A)(ii), (iii), (iv). As relevant here, Clause Three instructs: "The debtor's average monthly payments on account of secured debts shall be calculated as the sum of . . . the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the filing of the petition." § 707(b)(2)(A)(iii)(I).

Now apply those rules here. Everyone agrees the mortgage on the Cooks' house is a "secured debt[]." 11 U.S.C. § 707(b)(2)(A)(iii). Accordingly, Clause Three says the Cooks' "average monthly payments on account of" that mortgage "shall be calculated" based on the amounts "contractually due to secured creditors," § 707(b)(2)(A)(iii)(I)—that is, what the Cooks owe under their mortgage agreement. Performing that calculation, the Cooks reached an average monthly payment of $2,233.34. Then, Clause One tells the Cooks to "reduce[]" their "current monthly income" "by the amount[] determined under" Clause Three. § 707(b)(2)(A)(i). Thus, the Cooks subtracted $2,233.34 (and other uncontested amounts) from their current monthly income to reach a disposable income of $253.27. Easy-peasy.

---

demonstrating "special circumstances." U.S.C. § 707(b)(2)(B). See p. 9, *infra* (discussing that provision).

B.

The trustee offers a flurry of arguments against this straightforward reading. We are unpersuaded.

In essence, the trustee asserts the critical provision here is Clause Two—specifically, the first sentence of Clause Two's five subparts about how to calculate "[t]he debtor's monthly expenses." 11 U.S.C. § 707(b)(2)(A)(ii)(I). The language the trustee relies on reads:

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards . . . issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief[.]

*Id.* Because the Local Standards contain allowances for "[h]ousing expenses"—*and* define that term to include "mortgage (including interest)," Internal Revenue Manual § 5.15.1.10.1 (Nov. 22, 2021); see note 1, *supra*—the trustee insists the Cooks must use the lower, Local Standard number rather than their actual mortgage payment.

The trustee's argument fails multiple times over. To start, it violates "the first rule of . . . statutory interpretation," which is: "Read on." *Arkansas Game & Fish Comm'n v. United States*, 568 U.S. 23, 36 (2012). Just two sentences after the language the trustee relies on, Clause Two states: "Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts." 11 U.S.C. § 707(b)(2)(A)(ii)(I). A home mortgage is, of course, a debt. Thus, read in full, Clause Two

6

declares that the National and Local Standards govern a debtor's "monthly expenses," while clarifying mortgage payments are not "monthly expenses." *Id.*[3]

The trustee gamely insists the "notwithstanding" clause precludes the Cooks from deducting their actual mortgage payments under Clause Three. But the trustee does not explain how a directive limited to "this clause" (that is, Clause Two) somehow extends to Clause Three. Nor does the trustee clarify how an instruction about "monthly expenses" should apply to Clause Three, which never uses that term.

Making matters worse, the trustee's argument also finds no support in the text of Clauses One and Three. Nothing in Clause One says debtors may "reduc[e]" their current monthly income "by the amount[] determined under" Clause Three *only* if that amount turns out to be less than the Local Standard referenced in Clause Two. 11 U.S.C. § 707(b)(2)(A)(i). Nor does Clause Three suggest that debts secured by a person's home receive less favorable treatment than other types of secured debt for which there may be no relevant National or Local Standard. Quite the contrary. Beyond allowing debtors to deduct the full amount of their "contractually due" mortgage payments, Clause Three allows debtors to deduct "any additional payments to secured creditors necessary for the

---

[3] A reader wondering why the IRS would have gone to the trouble of preparing county-level housing-cost figures if those amounts were inapplicable to debtors like the Cooks should recall the Standards were not created for bankruptcy purposes, but (as the trustee concedes) to assess delinquent tax liability. It makes sense then that, rather than reinvent the wheel, the means test would adopt the National and Local Standards for calculating debtors' monthly expenses. This rare display of federal efficiency does not compel this Court to adopt a mangled reading of the means test. Cf. *Ransom*, 562 U.S. at 72 ("[T]he IRS's explanatory guidelines to the National and Local Standards . . . of course cannot control if they are at odds with the statutory language.").

7

debtor . . . to maintain possession of the debtor's primary residence." § 707(b)(2)(A)(iii). This provision cannot be squared with the trustee's view that the means test could leave debtors like the Cooks with insufficient funds to pay their mortgage in the first place.[4]

The trustee asserts Clause Three merely tells debtors how to *calculate* their average monthly payments on secured debts but does not authorize debtors to deduct the resulting amount from their gross monthly income. True, nothing in Clause Three itself allows the Cooks to subtract the calculated amounts from their monthly income. But Clause One does. Indeed, Clause One tells debtors to deduct "the amounts determined under" Clause Three from their monthly income in the same sentence and with the same language in which it tells debtors to do the same for Clauses Two and Four. See 11 U.S.C. § 707(b)(2)(A)(i) ("the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv)").[5]

The trustee's "Clause Three as calculator" theory faces another problem: It is not obvious why Clause Three would tell debtors to calculate a figure (and how to do it) unless the resulting number had some real-world purpose. Undeterred, the trustee responds that those calculations do have practical effect—they provide the maximum amount the Cooks

---

[4] In *Lynch v. Jackson*, 853 F.3d 116 (4th Cir. 2017), this Court held that two above-median income debtors whose home mortgage and car loan expenses were less than the amount listed in the Local Standards were "entitled to the full National and Local Standard amount." *Id.* at 118. As the trustee acknowledges, that decision did not consider or discuss the applicability of Clause Three to a mortgage debt. See Oral Arg. 13:34–14:13.

[5] The trustee notes that Clause Three (unlike Clauses Two and Four) does not contain the word "expense." But then, neither does Clause One. All four clauses, however, use the same word to discuss the thing being deducted: "amounts." See 11 U.S.C. § 707(b)(2)(A).

8

may deduct *if* they prove to the bankruptcy court the amount above the relevant Local Standard is "reasonable." Oral Arg. 4:40–5:04; see *id.* at 1:07–10. As support for this view, the trustee points to a provision—which we will call Subparagraph B—stating a debtor may "rebut[ ]" a "presumption of abuse" generated under Subparagraph A "by demonstrating special circumstances" that "justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative." 11 U.S.C. § 707(b)(2)(B)(i); see note 1, *supra*.

That view comes with its own host of problems. For one thing, saying a debtor may rebut a presumption of abuse by showing special circumstances is different from saying a bankruptcy court may permit deductions for any debts the court concludes are reasonable. What is more, Subparagraph B only allows bankruptcy courts to assess a debtor's special circumstances if their petition is shown to be presumptively abusive under Subparagraph A; it does not alter whether and how much a debtor may deduct for secured debts as a matter of course. And nothing in Clause Three suggests there is "any qualification or limitation on the kind of secured debt that is deducted from current monthly income." *Welsh*, 711 F.3d at 1134.

At bottom, the trustee's plea for a reasonableness limitation sounds in public policy. Like the Ninth Circuit, we recognize our interpretation of Clause Three means "debtors could make secured payments on luxury or comfort items"—or expensive home mortgages—"with the result that little 'disposable income,' as that figure is calculated, remains to pay unsecured creditors." *Welsh*, 711 F.3d at 1130. One might reasonably object

9

to favoring one type of creditor over another or limiting a bankruptcy court's discretion to decide which debt payments are reasonable or should take priority.

"As usual," however, "there are (at least) two sides to the policy question before us," and "a rational Congress could reach the policy judgment the statutory text suggests it did." *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1486 (2021). The current statutory regime was introduced in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, which sought "to correct perceived abuses of the bankruptcy system." *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 231 (2010). In particular, the means test "supplants the [previous] practice of calculating debtors' reasonable expenses on a case-by-case basis"—a regime that "led to varying and often inconsistent determinations." *Ransom*, 562 U.S. at 65. Because "Congress made a conscious effort to cabin the discretion of bankruptcy judges" by removing the power to determine "what is or is not 'reasonably necessary,'" *Welsh*, 711 F.3d at 1130, 1134 (some quotation marks omitted), we decline to interpret the statute to restore the very power Congress removed.

\*     \*     \*

The Cooks were entitled to use their average monthly mortgage payments when calculating their disposable income. The order of the bankruptcy court is thus

*AFFIRMED*.